Case 1:20-cv-00094   Document 23   Filed on 06/29/21 in TXSD   Page 1 of 17

United States District Court
Southern District of Texas
**ENTERED**
June 29, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| RUBEN GUZMAN, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:20-cv-94 |
| | § | |
| ANDREW M. SAUL, | § | |
| Defendant. | § | |

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Pending before the Magistrate Judge is the petition for review of the denial of Disability Insurance Benefits and Supplemental Security Income filed by Ruben Guzman. Dkt. No. 1.

Having reviewed the record and the pleadings, the Court recommends that the petition be granted. The findings of the Administrative Law Judge ("ALJ") are not supported by substantial evidence.

### I. Background

#### A. Procedural History

In 2016, Guzman applied to receive Disability Insurance Benefits and Supplemental Security Income. Dkt. No. 16-7, pp. 269-81.[1] Guzman claimed that his disability effective date was September 28, 2016. Dkt. No. 16-3, p. 15.

On March 30, 2017, Guzman's claim was denied. Dkt. No. 16-3, p. 14. On November 13, 2017, after reconsideration, Guzman's claim was again denied. Id. On March 12, 2019, a hearing was held before an ALJ. Id. On June 4, 2019, the ALJ decided that Guzman was not entitled to benefits. Id, p. 35. On May 4, 2020, the Appeals Council denied Guzman's timely request for review. Id, p. 1. Guzman has sought timely review of the Commissioner's decision in this Court.

---

[1] The page numbers refer to the Bates numbers on the bottom right hand corner of the page.

**B. Factual Context**

Guzman was born in April 1969 and was 45 years old at the time of his claimed disability onset date. Dkt. No. 16-7, p. 269.

Guzman had previously worked as a home health care aide. Dkt. No. 16-3, p. 33. He has an eighth-grade education. Dkt. No. 16-3, p. 49. He is separated from his wife and lives with his father and brother. Id., p. 59.

The ALJ found that Guzman suffered from "right shoulder degenerative joint disease and impingement syndrome, thoracolumbar degenerative disease, mild generalized osteoarthritis, chronic obstructive pulmonary disease (COPD)/asthma, chronic sinusitis, arteriosclerosis of carotid arteries, and obesity." Dkt. No. 16-3, p. 17. Those specific findings, generally, are undisputed. Instead, Guzman disputes: (1) the ALJ's finding that Guzman does not have any severe emotional/psychological impairments; and, (2) that there are sufficient jobs within the national economy that he can perform. The Court will focus its discussion of the facts as they relate to these two claims.

**C. Guzman's Medical History**

During his treatment and the disability process, Guzman was examined by multiple doctors. A summary of their observations and findings follows.

On April 6, 2015, Guzman was examined by Dr. Mario Alonzo Sanchez – who appeared to be his primary care physician – who diagnosed with him with anxiety and depression related to the death of Guzman's mother. Dkt. No. 16-10, p. 446. He was prescribed Celexa. Id.

On November 29, 2016, Guzman's wife reported to Dr. Sanchez that Guzman was exhibiting behavioral changes, including a "short temper," after his mother passed away. Id., p. 509. Dr. Sanchez discontinued the prescription for Celexa and prescribed risperidone instead. Id., p. 510.

On October 5, 2017, Guzman reported to Dr. Sanchez that he was suffering from anxiety, depression, and difficulty sleeping. Dkt. No. 16-11, pp. 617-621. He was prescribed Citalopram Hydrobromide for the anxiety. Id. During a follow up visit on

2

November 7, 2017, Guzman continued to report that he suffered from anxiety, depression and difficulty sleeping. Dkt. No. 16-14, p. 835. Dr. Guzman discontinued the Citalopram Hydrobromide prescription and prescribed Wellbutrin instead. Id.

As part of the process, Guzman's sister – Marissa Guzman – completed a third-party function report. Dkt. No. 16-8, p. 350. She reported that Guzman's daily routine consisted of waking up, showering, returning to bed, then getting something to eat before laying down to watch TV. Id., p. 351. She reported that his pain kept him from being able to do household chores or yard work. Id., pp. 352-53.

### D. Disability Evaluation

Guzman was personally interviewed by Dr. Michael Heffernan as part of the disability process. Dr. Sallie Boulos-Sophy and Dr. Leif Leaf, state agency medical consultants, reviewed Guzman's medical records regarding his emotional and psychological state and abilities as part of the disability adjudication process.

#### 1. Dr. Heffernan

On March 14, 2017, Dr. Michael Heffernan reviewed Guzman's medical records and personally interviewed him as part of the process. Dkt. No. 16-11, p. 562.

Guzman reported to Dr. Heffernan that he has difficulty falling asleep and staying asleep. Dkt. No. 16-11, p. 563. Guzman reported being able to dress himself, groom himself, perform "simple" household chores and prepare "simple" meals. Id. He reported being unable to pay his bills independently and that he required assistance in shopping, such as choosing the correct items, "going through the checkout line and obtaining correct change." Id. Guzman also reported that he has "difficulty interacting with others," and that he avoids social interaction and is "easily frustrated" in his interpersonal interactions. Id.

Guzman had a ninth-grade education and had "below average" grades, while requiring special education classes. Dkt. No. 16-11, p. 563. Guzman denied ever using illicit drugs.[2] Id.

---

[2] In January 2018 and May 2018, drug screens showed that Guzman tested positive for cocaine in his system. Dkt. No. 16-12, p. 636; Dkt. No. 16-16, p. 910.

In the interview, Guzman was "unable to concentrate . . . without interruptions and the need to repeat questions." Dkt. No. 16-11, p. 564.  He was unable to count backwards from 100 by 3's, replying, "100…98…92 Can not do this." Id.  Dr. Heffernan stated that Guzman's attention and concentration were "below normal limits with tendencies toward being distracted." Id.  He also stated that Guzman's "thoughts proceeded at below normal rate with evidence of retarded or inhibited thinking." Id.

Guzman was able to repeat "7 digits forward and 3 digits backward," showing that his immediate memory was within normal limits." Dkt. No. 16-11, p. 565.  However, Guzman was unable to remember Dr. Heffernan's name, any current news events, or the names of the previous three presidents, demonstrating that his remote memory was "below normal limits." Id.  Guzman was also unable to remember the names "of three objects in the room . . . after an intervening period of five minutes," showing that recent memory was below normal limits. Id.

Guzman was also unable to name the ingredient that makes bread rise, identify the capital of France, solve three word similarities (like "how is north like west" or how is "love like hate"), or solve number series (such as "3, 6, 9, 12" or "2, 4, 8, 16"). Dkt. No. 16-11, p. 565.  Dr. Heffernan opined that Guzman's "cognition, including reasoning, problem solving, abstract thinking, and academic learning is estimated to be below normal limits." Id. pp. 565-66.  Dr. Heffernan did note that the only way to have a "more exact determination" of Guzman's cognitive abilities would be to have him complete an IQ test. Id.

Dr. Heffernan noted that Guzman "demonstrates emotional reciprocity and understanding of nonverbal communication." Dkt. No. 16-11, p. 563.  He also noted that Guzman demonstrated "no indications of somatic delusions, delusions of control, delusions of grandeur, delusions of persecution or delusions of reference." Id.  He also showed no signs of hallucinations or pseudo-hallucinations. Id.  Guzman was also oriented to the time, place, person, and situation. Id., p. 565.

Dr. Heffernan asked Guzman if he had "an emotional or mental disorder" as well as if he considered himself "responsible for [his] behavior and emotions." Dkt. No. 16-11, p.

4

566. Guzman replied that he did not comprehend either question. Id. When asked what he would do if he found a stamped, addressed envelope in the street, Guzman replied, "throw it away." Id.

Dr. Heffernan diagnosed Guzman with intellectual disabilities, opining that he shows "significant problems in reasoning, problem solving, abstract thinking and learning." Dkt. No. 16-11, p. 566. He also diagnosed Guzman with language disorders, ADHD, major depressive order, anxiety, somatic symptom disorder as well as major and mild neurocognitive disorders. Id., pp. 566-67. Dr. Heffernan stated that Guzman has "experienced a significant cognitive decline in attention, memory, abstract thinking and problem solving." Id.

Dr. Heffernan found that Guzman had substantial work-related impairments in being able to "understand and learn job related tasks and apply information for one and two step instructions," in his ability to "understand and learn job related tasks and apply information for complex instructions," as well as his ability to "carry out and complete complex and one-two step instructions." Dkt. No. 16-11, p. 567. He also had substantial work-related impairments in his abilities "to remember complex and one-two step instructions," "to sustain concentration and persist in work related activity at a reasonable pace," "to maintain effective social interaction on a consistent basis with supervisors, co-workers and the public," and "to deal with normal pressure in a competitive work setting." Id., pp. 567-68. Dr. Heffernan stated that while Guzman understands "the meaning of filing for benefits," he "is not able to manage benefit payments in [his] own interest." Id.

### 2. Dr. Bolous-Sophy

On March 21, 2017, Dr. Bolous-Sophy reviewed Guzman's medical records and issued a report. Dkt. No. 16-4, p. 75. She found that he suffered from "severe" depressive, bipolar and related disorders. Id.

Dr. Bolous-Sophy found that Guzman was moderately limited in: his ability to understand and remember detailed instructions; his ability to maintain attention and concentration for extended periods; his ability to maintain attention and concentration for extended periods; his ability to sustain an ordinary routine without special supervision; his

5

ability to work in coordination with, or in proximity to, others without being distracted by them; and, his ability to interact appropriately with the general public. Dkt. No. 16-4, pp. 79-81.

### 3. Dr. Leaf

On November 13, 2017, Dr. Leif Leaf reviewed Guzman's medical records and issued a report. Dkt. No. 16-4, p. 107. He also found that Guzman suffered from "severe" depressive, bipolar and related disorders. Id.

Dr. Leaf found that Guzman was moderately limited in his ability to understand and remember detailed instructions, his ability to maintain attention and concentration for extended periods, his ability to maintain attention and concentration for extended periods, his ability to sustain an ordinary routine without special supervision, his ability to work in coordination with or in proximity to others without being distracted by them, and his ability to interact appropriately with the general public. Dkt. No. 16-4, pp. 111-12. Thus, his opinion matched Dr. Bolous-Sophy's opinion.

Before turning to and examining the specifics of the ALJ's decision in Guzman's case, it is first necessary to understand the disability determination process, as it relates to disability applications.

## II. Determining Disability – The Five-Step Process

A claimant must be disabled to receive benefits under Title II of the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. (emphasis added).

To determine whether a claimant is disabled, the Commissioner is required to employ a sequential five-step process. 20 C.F.R. § 404.1520; Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). The burden of proof lies with the claimant at each step; except for step five, which contains a shifting burden. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). If at any stage the claimant fails to make the required showing, the

evaluation process stops and the claimant is determined to not be disabled. <u>Harrell v. Bowen</u>, 862 F.2d 471 (5th Cir. 1988).

### A. Step One

In the first step, the claimant must show that he or she is not currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). Substantial gainful activity is defined as work that involves "doing significant and productive physical or mental duties" and is "done (or intended) for pay or profit." 20 C.F.R. § 404.1510. If the claimant is working and the work constitutes substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 404.1520(b).

### B. Step Two

The second step of the process requires the claimant to show that his or her impairment is medically severe. 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one which "significantly limits [the] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Unless the impairment is expected to result in death, it must have lasted – or be expected to last – for at least 12 months. 20 C.F.R. § 404.1509. If a claimant cannot show a medically severe impairment that meets the duration requirement, the claimant is not disabled under the law. 20 C.F.R. § 404.1520(c). As noted, this showing applies to both physical and mental impairments.

### C. Step Three

At the third step, the claimant must demonstrate an impairment that is listed in Appendix 1 to 20 C.F.R. § 404.1520(p) (a "listed impairment") – or is equal to a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant can show that the impairment meets the duration requirement and is a listed impairment, then he or she is adjudged to be disabled without regard to age, education, or work experience. 20 C.F.R. § 404.1520(d). If the claimant cannot show a listed impairment – or its equivalent – the process continues to step four. 20 C.F.R. § 404.1520(e).

### D. Step Four

In step four, the claimant must show that he or she lacks the "residual functional capacity" to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant

work is defined as gainful activity performed within the last 15 years, where the claimant's employment lasted long enough for the claimant to learn how it is performed. 20 C.F.R. § 404.1560(b)(1).

### 1. Residual Functional Capacity

Residual functional capacity "is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." Irby v. Barnhart, 180 Fed. App'x. 491, 493 (5th Cir. 2006) (unpubl.) (citing Social Security Ruling 96-8p).

In addressing the symptoms raised by the claimant, the ALJ is required to follow a two-step process. 20 CFR § 404.1529(a); Herrera v. Commissioner of Social Sec., 406 Fed. App'x. 899, 905 (5th Cir. 2010) (unpubl.). "Both SSR 96-7p and 20 C.F.R. § 404.1529 emphasize that subjective symptoms alone, absent some indication that they are supported by objective medical evidence, fail to support a disability finding." Salgado v. Astrue, 271 Fed. App'x. 456, 460 (5th Cir. 2008) (unpubl.). Thus, to establish a disability, the criteria in both of the following steps must be satisfied.

The first step is a determination of whether the claimant suffers from a medically determinable impairment that is "reasonably capable of producing" the claimed symptoms. SSR 96-7p. Claimed symptoms "will not be found to affect [one's] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 CFR § 404.1529(b). The ALJ proceeds to the second step only if the Claimant is found to have a medically determinable impairment that could cause the alleged symptoms. Winget v. Astrue, 2007 WL 4975206, *10 (W.D. Tex. 2007) (unpubl.). In other words, if the evidence does not objectively support a conclusion that the alleged cause is reasonably capable of producing the symptom, then a finding of no disability is required.

On the other hand, if the medical evidence objectively identifies an impairment that could reasonably produce the claimed symptom, the inquiry turns to the severity and impact of that symptom. The second step is to evaluate the "intensity, persistence, and

8

limiting effects of the individual's symptoms" on their ability to do basic work activities. SSR 96-7p. This includes the symptoms and impacts of depression and anxiety. Dickerson v. Colvin, No. 3:12-CV-131 CDL, 2013 WL 5676639, at *6 (M.D. Ga. Oct. 16, 2013). In performing this evaluation, the ALJ considers the objective medical evidence; the claimant's testimony; the claimant's daily activities; the location, duration, frequency, and intensity of the individual's symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms. Id.

The ALJ also considers treatment – other than medication – that the individual receives or has received for relief of pain or other symptoms. Finally, the ALJ also considers any other factors relating to the claimant's functional limitations and restrictions resulting from pain or other symptoms. Id.

If the ALJ finds that the claimant's current RFC is incompatible with the ability to perform his or his prior relevant work, the process moves to step five.

### E. Step Five

The fifth step requires the Commissioner to show that the claimant is capable of performing other work. 20 C.F.R. § 404.1520(a)(4)(v). Once the Commissioner makes the requisite showing, the burden shifts to the claimant to rebut the Commissioner. Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002).

The Commissioner considers the claimant's RFC as well as the claimant's age, education, and experience, in determining whether the claimant can perform other substantial work within the national economy. 20 C.F.R. § 404.1520(g)(1); Masterson, 309 F.3d at 272. Based upon these considerations, the Commissioner must show that the claimant can perform work in the national economy and that such work exists in significant numbers in that economy.

If the Commissioner can show that the claimant can perform other substantial work within the national economy, the claimant is adjudged not to be disabled. 20 C.F.R. § 404.1520(g)(1). If the Commissioner fails to show that the claimant is capable of

performing other work, or if the claimant successfully rebuts the Commissioner's findings, the claimant is found to be disabled and is entitled to disability benefits. Id.

### III. The ALJ's Decision

In step one, the ALJ found that Guzman had not engaged in substantial gainful activity since September 28, 2016. Dkt. No. 16-3, p. 17.  That finding is not challenged.

In step two, the ALJ found that Guzman suffered from "right shoulder degenerative joint disease and impingement syndrome, thoracolumbar degenerative disease, mild generalized osteoarthritis, chronic obstructive pulmonary disease (COPD)/asthma, chronic sinusitis, arteriosclerosis of carotid arteries, and obesity." Dkt. No. 16-3, p. 17.  While those specific findings are not contested, the ALJ's finding that Guzman's ADHD, major depressive disorder, panic disorder, somatic symptom disorder and cocaine use, "considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe," is contested by the parties. Id., pp. 17-18.

In making this finding, the ALJ considered the "four broad areas of mental functioning" listed in the regulations: (1) understanding, remembering or applying information; (2) interacting with others; (3) concentrating, persisting or maintaining pace; and (4) adapting or managing oneself. Dkt. No. 16-3, pp. 21-23.  As to the first area, the ALJ found that Guzman had a mild limitation in understanding, remembering, or applying information. Id., p. 21.  She found that his "alleged limitations are mostly due to physical symptoms." Id.  As to the second area, the ALJ found that Guzman has a mild limitation in functioning with others. Id., p. 22.  While acknowledging that Guzman reported more severe limitations in functioning with others, the ALJ held that the "medical evidence of record does not support the level of severity alleged." Id., p. 23.  The ALJ did not explain which medical evidence contradicted the self-reported limitations.

As to the third area, the ALJ found that Guzman has a mild limitation in concentrating, persisting, or maintaining pace. Dkt. No. 16-3, p. 23.  The ALJ stated that while Guzman testified at his hearing that "sometimes he cannot remember things," he still "responded throughout the hearing." Id.  As for the fourth area, the ALJ found that Guzman

had no limitation in adapting or managing himself. Id. The ALH found that the "alleged limitations are mostly due to physical symptoms." Id.

Because Guzman had no more than a mild limitation in any area, the ALJ found that the impairments were non-severe. Dkt. No. 16-3, p. 24. The ALJ gave "little weight" to Dr. Boulos-Sophy's opinion "because the medical evidence of record supports that the claimant's mental impairments are non-severe." Id., p. 33. The ALJ also gave "little weight" to Dr. Heffernan's opinion because "the medical evidence of record does not support it." Id., p. 21.

The ALJ – in her step three analysis – found that Guzman did not have an impairment or combination of impairments that equaled a listed impairment, moving the process to step four. Dkt. No. 16-3, p. 25. This finding is also unchallenged.

In step four, the ALJ found that Guzman had no limitations on his RFC to perform the mental aspects of work. Dkt. No. 16-3, p. 33. Because his mental impairments were "non-severe," the ALJ found that they did not impact his RFC. Id. The ALJ found some physical limitations with the RFC. Id., p. 17.

The ALJ found that Guzman was unable to perform his past relevant work as a home health aide. Dkt. No. 16-3, p. 33.

Based upon the testimony of the vocational expert, in step five, the ALJ found that there were sufficient jobs in the national economy, such as garment sorter, laundry classifier and photocopy machine operator, that Guzman could still perform. Dkt. No. 16-3, p. 34-35. Guzman challenges this finding because the jobs identified all require a high school education, but he has only an eighth-grade education.

Based upon Guzman's RFC and his ability to still perform certain work, the ALJ concluded that Guzman was not disabled.

## IV. Applicable Law

### A. Standard of Review

The Court's review of the Commissioner's decision to deny disability benefits is limited to two inquiries: (1) whether the final decision is supported by "substantial evidence;" and (2) whether the Commissioner used the proper legal standards to evaluate

the evidence. Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000). "Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion." Spellman v. Shalala, 1 F.3d 357, 360 (5th Cir. 1993) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Moore v. Sullivan, 919 F.2d 901, 904 (5th Cir. 1990). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. § 405(g); Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999). "Conflicts within the evidence are not for the court to resolve." Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

The decision by the ALJ must "stand or fall" on the rationale set forth in the ALJ's opinion. Newton v. Apfel, 209 F.3d at 455. The Court will not uphold the ALJ's decision by finding or creating a different, better, or more adequate basis. Securities and Exchange Commission v. Chenery Corp., 332 U.S. 194, 196 (1947). "Reviewing courts do not consider rationales supporting an ALJ's decision that are not invoked by the ALJ." Orr v. Commissioner of Social Security Administration, Civil No. 3:08-CV-1592-K, 2009 WL 2337793 at *9 (N.D. Tex. July 27, 2009) (citing Bagwell v. Barnhart, 338 F. Supp.2d 723, 735 (S.D. Tex. 2004)).

Furthermore, the Court generally employs a harmless error standard in reviewing administrative proceedings. Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required"). The Court will not reverse a judgment unless "the substantial rights of a party have been affected." Id. (remand was not warranted when the claimant would not have been found disabled, even if the Court applied his proffered standard).

**V. Analysis**

Guzman has attacked the ALJ's decision on two grounds: (1) there is no substantial evidence to conclude that Guzman's intellectual and mental limitations did not constitute severe disabilities and (2) there is no substantial evidence to conclude that Guzman can perform the jobs identified by the vocational expert.

The review of Guzman's claim has one overarching limitation: it is not this Court's role to determine if Guzman is disabled. Instead, the Court is to determine whether the ALJ's decision is supported by substantial evidence. Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000) ("The court does not reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision."). With this in mind, the Court turns to the question of whether the ALJ's decision is supported by substantial evidence.

**A. Intellectual and Mental Limitations**

The ALJ concluded that Guzman's intellectual and mental limitations were not severe. This finding is not supported by substantial evidence.

While the word severe may seem to create a daunting evidentiary standard, the opposite is true. An impairment can be classified as non-severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." Jeansonne v. Saul, No. 20-30570, 2021 WL 1373965, at *2 (5th Cir. Apr. 12, 2021) (emphasis original) (citing Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985)). The claimant is only required to demonstrate a de minimis effect on his ability to work in order for a limitation to be considered severe. Jeansonne, 2021 WL 1373965, at *2.

In this case, every medical professional who considered Guzman's case considered his intellectual and mental limitations to be severe. Dr. Heffernan diagnosed Guzman with intellectual disabilities, language disorders, ADHD, major depressive order, anxiety, somatic symptom disorder as well as major and mild neurocognitive disorders. Dkt. No. 16-11, pp. 566-67. Indeed, Dr. Heffernan considered Guzman's limitations to be so severe that he did not believe that Guzman would be able to effectively manage any benefit payments that he received. Id.

Dr. Bolous-Sophy found Guzman suffered from "severe" depressive, bipolar and related disorders. Id. She also found that he was moderately limited in his ability to understand and remember detailed instructions; his ability to maintain attention and concentration for extended periods; his ability to maintain attention and concentration for

13

extended periods; his ability to sustain an ordinary routine without special supervision; his ability to work in coordination with or in proximity to others without being distracted by them; and his ability to interact appropriately with the general public. Dkt. No. 16-4, pp. 79-81.  Dr. Leaf made identical findings. Id., pp. 107-112.  A moderate limitation is consistent with a finding that an impairment is severe. 20 C.F.R. § 404.1520a(d)(1)-(2).

The ALJ gave their opinions "little weight" in concluding that no such severe limitations existed.  While the phrase "little weight" is not defined in the regulations, as a practical matter, the ALJ's decision gave no credence to the opinions of Drs. Heffernan, Bolous-Sophy and Leaf. See Young v. Berryhill, 689 F. App'x 819, 822 (5th Cir. 2017) (discussing how ALJs may give medical opinions "little or no weight" if good cause is shown for rejecting them).  In short, the record shows that three different medical professionals concluded that Guzman had severe intellectual and emotional limitations. Given the ALJ's findings, she clearly rejected all of the medical opinions in the record, determining that Guzman's intellectual and mental limitations were non-severe, even though there was no medical opinion which supported this conclusion.  This was an impermissible course of action.

"Although some determinations, such as disability and RFC, are legally reserved for the Commissioner, Social Security guidelines require adjudicators making these determinations to consider the opinions of medical sources." Giles v. Astrue, 433 F. App'x 241, 247 (5th Cir. 2011).  The Fifth Circuit has found that when every medical professional agrees that an impairment is severe, it is error for the ALJ to find that the impairment is non-severe. Salmond v. Berryhill, 892 F.3d 812, 819 (5th Cir. 2018); Loza v. Apfel, 219 F.3d 378, 394 (5th Cir. 2000).  That seems to be the case, here.

The ALJ based her decision largely on the descriptions of Guzman's daily living activities found in his medical records, hearing testimony and the information provided by his sister.  While it is appropriate to consider the claimant's daily activities in deciding the claimant's disability status, that consideration is not dispositive. Stanridge-Salazar v. Massanari, 254 F.3d 70, 2001 WL 502506 at *2 (5th Cir. 2001) (unpubl.) (citing Leggett v. Chater, 67 F.3d 558, 565 n. 12 (5th Cir. 1995)).

Furthermore, an ALJ may not act as a medical professional and use the medical records to derive her own conclusions to determine the limitations on a claimant's ability to work. Williams v. Astrue, 355 Fed. App'x. 828, 832 (5th Cir. 2009) (unpubl.) (ALJ may not rely on his own medical opinions, derived from raw medical records, to determine the limitations a disability has on a claimant's ability to work) (citing Ripley v. Chater, 67 F.3d 552, 557-58 (5th Cir. 1995)). The ALJ used these daily living activities to conclude that Guzman's intellectual limitations were based on his "physical symptoms" rather than any actual intellectual issues. This conclusion is not supported by any evidence. Given the absence of medical evidence to support the decision, the ALJ erred in concluding that Guzman's intellectual and emotional limitations were not severe.

This error was not harmless. The ALJ expressly chose not to include any intellectual or mental limitations in the RFC. Dkt. No. 16-3, pp. 25-26. She did so on the basis that the limitations were "non-severe." Id., p. 33. For that reason, no questions as to any intellectual or mental limitations were asked of the vocational examiner. Id., pp. 62-66. Thus, the error impacted every subsequent stage of the analysis.

This case should be remanded to the Commissioner for a new hearing.

**B. Jobs in National Economy**

Guzman argues that the ALJ errored by accepting the vocational expert's testimony that he could perform jobs in the national economy. Guzman argues that the jobs identified by the ALJ require a high school degree, while he only has an eighth-grade education.

As an initial matter, because the Court is recommending that the case be remanded for further administrative proceedings, the Court need not reach the issue of the vocational expert's testimony. Welch v. Colvin, No. 3:14-CV-141-SAA, 2015 WL 1720219, at *6 (N.D. Miss. Apr. 15, 2015). Indeed, the vocational expert may be facing a different set of questions based on a revised RFC.

However, if the Court is inclined to rule on this claim, it should be denied. The ALJ was present at the hearing and heard testimony about Guzman's educational level. Dkt. No. 16-3, pp. 46, 49. The questions posed by the ALJ expressly asked the vocational expert to

consider Guzman's educational background. Id., pp. 62-65. Guzman was given the opportunity to ask the vocational expert questions and declined to do so. Id., p. 66.

The ALJ "utilizes vocational experts because of their knowledge of job requirements and working conditions." Pineda v. Astrue, 289 F. App'x 710, 714 (5th Cir. 2008) (citing Vaughan v. Shalala, 58 F.3d 129, 132 (5th Cir. 1995)).

Guzman points to the Dictionary of Occupational Titles ("DOT") for his claim that each position requires a high school education. The DOT is a helpful resource, but it is not a dispositive one. See Carey v. Apfel, 230 F.3d 131, 145 (5th Cir. 2000) ("the DOT is not comprehensive, in that it cannot and does not purport to include each and every specific skill or qualification for a particular job").

The Fifth Circuit has held that "claimants cannot scan the record for implied conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT and then present these apparent conflicts as reversible error, at least when as here the claimant's counsel did not explore the supposed conflicts when cross-examining the vocational expert." Pineda v. Astrue, 289 F. App'x 710, 714 (5th Cir. 2008). That perfectly encapsulates what Guzman is attempting to do in this case.

The ALJ is entitled to rely on the vocational expert's testimony about the requirements for a particular position. Carey, 230 F.3d at 146 (even if there is a conflict between the DOT and the vocational expert's testimony, "the ALJ may rely upon the vocational expert's testimony[,] provided that the record reflects an adequate basis for doing so.").

Thus, the Court need not decide this issue, but if it chooses to do so, this claim should be denied.

## VI. Recommendation

It is recommended that the petition for review of the denial of Disability Insurance Benefits and Supplemental Security Income filed by Ruben Guzman be granted. This case should be remanded to the Commissioner of Social Security for further hearings not inconsistent with this report and recommendation.

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation in which to file written objections, if any, with the United States District Judge. 28 U.S.C. § 636(b)(1). A party filing objections must specifically identify the factual or legal findings to which objections are being made. The District Judge is not required to consider frivolous, conclusive, or general objections. Battle v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

If any party fails to timely object to any factual or legal findings in this Report and Recommendation, the District Judge is not required to conduct a de novo review of the record before adopting these findings. If the District Judge chooses to adopt such findings without conducting a de novo review of the record, the parties may not attack those findings on appeal, except on the grounds of plain error. Alexander v. Verizon Wireless Servs., L.L.C., 875 F.3d 243, 248 (5th Cir. 2017).

DONE at Brownsville, Texas on June 29, 2021.

_____
Ronald G. Morgan
United States Magistrate Judge